UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BARBARA G. BIGGS, | ) | 1:05 cv1145 DLB |
| | ) | |
| | ) | ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) | SOCIAL SECURITY COMPLAINT |
| | ) | |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**BACKGROUND**

Plaintiff Barbara G. Biggs ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On February 24, 2006, the Honorable Robert E. Coyle reassigned the case to the undersigned for all purposes. Due to the appointment of the Honorable Lawrence J. O'Neill to the position of District Court Judge this matter was reassigned to the undersigned on March 5, 2007.

1

# FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed for disability insurance benefits on September 26, 2002, alleging disability since October 30, 1995, due to diabetes, stress incontinence, carpal tunnel syndrome (CTS"), irritable bowel syndrome ("IBS"), degenerative arthritis, sciatica, spastic dysphenia, laryngitis, osteoporosis, angina pectoris, palpitations, shortness of breath, osteoarthritis, stress, nervousness, sphincter muscle weakness, hemorrhoids, insomnia, reflux, constipation, dry eyes, hay fever, post nasal drip, and bursitis in her shoulders. AR 62-64, 76-92. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 40-43, 48-52, 53. On January 15, 2004, ALJ Richard Goodman continued the hearing to allow Plaintiff to get a consultive examination and so that he could obtain additional records from Kaiser Permanente. AR 285-298. On July 15, 2004, ALJ Rocklin D. Lyons held a supplemental hearing. He denied the claim on October 27, 2004. AR 13-27. On July 8, 2005, the Appeals Council denied review. AR 5-8.

Hearing Testimony

ALJ Lyons held a supplemental hearing on July 15, 2004, in Fresno, California. Plaintiff appeared without representation. Vocational expert ("VE") Judith Najarian also appeared and testified.

Plaintiff testified that she was 63 years old at the time of the hearing. She has a college degree and a teaching certificate and taught elementary school. Plaintiff stopped working in 1995 because her multiple medical problems made teaching "too much." AR 303.

Plaintiff was diagnosed with diabetes in 2000 and controls it with diet. Plaintiff was diagnosed with CTS in 1995 or 1996 and had surgery on both wrists. She was diagnosed with arthritis before 2000. AR 304-305. She was diagnosed with IBS in the eighties and recently started suffering incontinence due to a weak sphincter muscle. AR 305. Plaintiff was diagnosed with osteoporosis in the nineties. AR 306. Plaintiff testified that she also suffers from spastic dysphonia (hoarseness and laryngitis) and insomnia. AR 306, 312.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Plaintiff receives treatment mainly for IBS and osteoporosis.  The osteoporosis causes her back to hurt a lot and makes it difficult for her to lift.  AR 308-309.  Plaintiff testifies that she tries to maintain a normal life.  She prepares meals, does light housekeeping, reads, watches television, goes grocery shopping and waters her flowers.  AR 309.  She attends church all the time.  AR 311.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education, and past work, with the ability to lift or carry up to 20 pounds occasionally and 10 pounds frequently.  This person could stand and walk six hours out of an eight hour day with normal breaks, sit without restriction, but could not do an excessive amount of climbing, stooping, kneeling, balancing, crouching and crawling.  AR 313.  This person could perform Plaintiff's past relevant work, as well as other types of transferrable teaching jobs.  AR 313-314.

If this person, due to IBS or a similar problem, faced intermittent but recurring bouts of bowel incontinence, this person could not perform her past relevant work.  AR 316.

If this person could lift more than 10 pounds, she would not be able to use her transferrable skills and would be limited to unskilled, sedentary jobs.  AR 316.  The ALJ did not include CTS in the hypotheticals because she had the surgery many years ago and there was no indication or concern about it in the recent medical records.  AR 317.

Medical Record

An April 1996 bone mineral density test revealed osteoporosis.  AR 257.  On April 4, 1996, Plaintiff requested a note to excuse her from jury duty based on her IBS.  AR 258.

In June 1996, Plaintiff reported that when she decreased her dosage of Donnatal, she felt tense and nervous.  She was diagnosed with withdrawal and underlying anxiety disorder.  AR 253.  Her medications were adjusted to treat her symptoms of anxiety, insomnia, and heart palpitations.  AR 243, 244.

Plaintiff was prescribed medication for her IBS in December 1996, but tried several due to side effects.  AR 234.  Plaintiff was previously taking Donnatal, but stopped and then had trouble sleeping.  AR 241.  She complained of palpitations and anxiousness in January 1997, but an EKG was normal.  AR 230-231.

On March 25, 1997, Plaintiff indicated that she had stopped all of her medications and felt better.

After Plaintiff reported blood in her stool in November 1997, she underwent a flexible sigmoidoscopy. There were no significant abnormalities. AR 224.

On January 26, 1998, Plaintiff complained of pelvic pain and cramping since Christmas. She was off of her medications. AR 223.

A February 1998 pelvic sonogram revealed calcifications within the myometrium, possibly small fibroids, but not measurable. AR 219. On February 18, 1998, Plaintiff indicated that her cramping was improving gradually, depending on what she ate. She also felt that exercising made things better.

In March 1998, Plaintiff complained of left lower quadrant pain, but had a normal abdominal examination. AR 221. She complained of lower abdominal cramps and spotting in June 1998. AR 220.

In July 1998, Plaintiff continued to complain of episodic flank pain but obtained some relief from Donnatal, although she indicated that she preferred not to be dependent on it. AR 216. Plaintiff was diagnosed with persistent IBS symptoms, but with normal sigmoidoscopy and pelvic examinations. She was told that fiber was the most effective and prescribed Fibercon. AR 215.

On September 14, 1998, Plaintiff complained of swelling, numbness and cramping in her distal fingers and joints in the morning, and decreased stamina for fine work. She was diagnosed with CTS/osteoartritis and told to continue her non-steroidal anti-inflammatory medications, Tylenol, and to use splints. AR 214.

A colonoscopy performed in October 1998 was normal with no polyps seen. AR 209. An upper endoscopy was also normal. AR 64. A biopsy of the stomach was unremarkable, and a biopsy of the colon and rectum revealed colonic mucosa with mild eosinophilia, but with no evidence of lymphocytic colitis of collagenous colitis. AR 212.

A bone mineral density test performed in April 1999 revealed osteoporosis in the lumbar spine and osteopenia in the left hip. AR 162.

In March 2000, Plaintiff complained of being tense, nervous and anxious, and weak and shaky before she ate. AR 201. A positive glucose tolerance test in April 2000 confirmed that Plaintiff was diabetic. AR 198.

In May 2000, Plaintiff reported that she was having trouble sleeping since stopping Donnatal. She was prescribed Zoloft because Paxil caused severe cramps. AR 193.

On May 11, 2000, Plaintiff underwent a bone mineral density scan that revealed osteoporosis in the lumbar spine and osteopenia in the total left hip. The bone values were slightly worse than the prior study. AR 194.

Plaintiff was referred to nutritional counseling in July 2000. She reported that she was doing well with her blood sugar, but had lost weight. The dietician reviewed Plaintiff's blood sugar history and indicated that it appeared to be well controlled. AR 192.

Plaintiff underwent an upper abdominal sonogram on March 9, 2001, after a history of elevated liver enzymes. The sonogram was negative. AR 181.

On June 24, 2001, Plaintiff underwent x-rays of her lumbar spine after complaining of chronic back pain. The x-ray revealed osteopenia with mild degenerative joint disease. AR 178, 180.

Plaintiff reported atypical chest pain in November 2001. AR 173. On January 7, 2002, Plaintiff underwent a treadmill test. There was no arrhythmia and she had excellent exercise tolerance. AR 170.

Plaintiff sought dietary advice in April 2002. A registered dietician noted that Plaintiff appeared to be doing well with her current diet and provided meal ideas to increase variety. AR 168.

Plaintiff underwent ECG monitoring in August 2002. The test revealed very rare premature ventricular contraction and rare premature auricular contractions. Plaintiff complained of palpitation and fluttering, which was most likely a sensation of the premature auricular contractions. Plaintiff's sinus rhythm was most likely normal. AR 165.

1       In 2003, State Agency physician Carmen E. Lopez, M.D., reviewed the evidence and concluded that there was insufficient evidence to render an RFC prior to December 31, 1999, her date last insured. AR 136-140.

       In September 2003, Plaintiff received emergency room treatment for complaints of weakness, fatigue and chest pain. An ECG was essentially normal and she was discharged with a diagnosis of dyspepsia. AR 270-277.

       Plaintiff saw Jill Ostrem, M.D., for a consultive examination on February 16, 2004. Her chief complaints were CTS, low back pain and arthritis. Upon examination, Plaintiff was not in any acute distress, but walked with a cautious gait. She complained of back pain when performing heel and toe walking, but she was able to do it temporarily. Cervical spine range of motion was within normal limits, although her range of motion was slightly limited in her lumbar spine. Plaintiff's stance was suggestive of osteoporosis. There was no sciatic notch tenderness on either side, but Plaintiff did have paraspinal muscle tenderness in the lumbar region. Straight leg raising produced pain in the lower back, but no radiating pain. Range of motion on the upper and lower extremities was within normal limits. Plaintiff complained of mild tenderness upon palpation of the wrist joint, although there was no evidence of joint swelling, osteoarthritis joint deformity, or swelling. Motor strength was normal throughout and sensation was normal except for decreased light touch on the left lower lateral leg and reported decreased temperature in the right foot. AR 278-282.

       Dr. Ostrem diagnosed CTS, now with chronic pain which may not be related as there are no sensory changes, osteoarthritis that appears to be affecting her spine significantly but with no obvious peripheral involvement, low back pain most likely secondary to degenerative lumbar spine changes, and possible L5 left sensory radiculopathy. Dr. Ostrem opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, could stand and walk six hours out of an eight hour day, and could sit without restriction. She cannot perform excessive climbing, stooping, kneeling, balancing, crouching or crawling. AR 282.

///

///

ALJ's Findings

The ALJ determined that Plaintiff was insured for purposes of disability insurance benefits for the period from October 30, 1995, through December 31, 1999. Although Plaintiff had the medically determinable impairments of diabetes (diet controlled), status post CTS surgery, arthritis, IBS and incontinence, she did not have any severe impairments prior to her date last insured. In making this determination, the ALJ found that Plaintiff's allegations as to the degree of her impairments and limitations prior to her date last insured were not fully credible. AR 26.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42

7

U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process.  20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3]  Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since October 30, 1995, the alleged onset of her disability; and (2) did not have an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations (20 CFR §§ 416.920(b)), and was therefore not disabled..

Here, Plaintiff argues that (1) the SSA failed to get all records from Kaiser Permanente; (2) the ALJ failed in finding Plaintiff's impairments non-severe; and (3) the ALJ erred in finding Plaintiff not fully credible.

**DISCUSSION**

A.   Additional Records

Plaintiff's arguments are based on the underlying allegation that the ALJ did not get copies of her complete medical record from Kaiser Permanente.  Specifically, she states that there is "relevant medical evidence at Kaiser Permanente for 1988 to 10-22-05."  Opening Brief, at 8.  She explains that 137 pages of the Administrative Records are Kaiser records, but that she has seen her medical records at Kaiser "and it looked like there were about 4 times as many pages- many with information on both sides."  Opening Brief, at 8.  She contends that the missing evidence documents her "back pain, carpal tunnel pain, insomnia, hoarseness, allergy tests, neurology reports and visits" and shows "impairments prior [to] my last date insured."

---

[3] All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

1  Opening Brief, at 8, 18.  Elsewhere, she contends that the missing records document
2  osteoporosis, sciatica, spastic dysphoria, nervousness, insomnia, dry eyes, and chest and arm
3  pain.  She further contends that SSA failed to copy x-rays of her back taken before the June 2001
4  x-ray, range of motion tests, and various tests prior to her CTS surgery.  Plaintiff further alleges
5  that she alerted SSA numerous times that they did not copy or evaluate all of her medical records,
6  but it never addressed the mistake.
7       In general, it is the duty of the claimant to prove to the ALJ that she is disabled.  20
8  C.F.R. § 404.1512(a).  To this end, she must bring to the ALJ's attention everything that supports
9  a disability determination, including medical or other evidence relating to the alleged impairment
10 and its effect on her ability to work.  *Id.*  It is therefore Plaintiff's burden to produce full and
11 complete medical records, not the Commissioner's.  *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th
12 Cir. 1999).
13      However, when the evidence is ambiguous or "the record is inadequate" to allow for
14 proper evaluation of the evidence, the ALJ has a duty to develop the record.  *Tonapetyan v.*
15 *Halter*, 242 F.3d 1144, 1150 (9th Cir.2001).  The ALJ may discharge this duty in one of several
16 ways, including subpoenaing claimant's doctors, submitting questions to claimant's physicians,
17 continuing the hearing, or keeping the record open after the hearing to allow supplementation of
18 the record.  *Id.*  If this information fails to provide a sufficient basis for making a disability
19 determination, or the evidence conflicts to the extent that the ALJ cannot reach a conclusion, he
20 may seek additional evidence from other sources. 20 C.F.R. §§ 404.1512(e); 404.1527(c)(3); see
21 also *Mayes v. Massanari*, 262 F.3d 963, 968 (9th Cir.2001).
22      From the record, it appears that Plaintiff notified the ALJ and/or the SSA that she
23 believed that her medical record was incomplete because it did not contain all of her Kaiser
24 records.  AR 121, 128-135, 288, 302.  Plaintiff also asked the Appeals Counsel to obtain
25 additional evidence.  AR 11.  The Appeals Council explained that it was her responsibility to
26 send the evidence she wanted considered, and allowed her an additional thirty days to do so.  AR
27 9.  Plaintiff did not submit further medical records.
28

As explained above, it is Plaintiff's burden to produce full and complete medical records. On January 3, 2003, SSA sent Kaiser a letter requesting all medical evidence from October 1995 through the present. In response, Kaiser sent medical records dated August 1, 1995, through May 22, 2003. AR 141-259. There is no indication from the submitted records that any pages are missing.

In any event, Plaintiff had the opportunity to submit the evidence she believed to be missing to the Appeals Council. Indeed, the Appeals Council specifically explained this to Plaintiff and allowed her additional time to submit such records. AR 9. She did not do so, and the Appeals Council denied her request for review. AR 4-8.

Nor did Plaintiff submit any evidence to this Court. While the evidence would only have been reviewed if it met a certain standard, Plaintiff did not even attempt to produce the records. Given that it is Plaintiff's responsibility to prove disability and produce records, and the fact that the record was not ambiguous or inadequate so as to trigger the ALJ's duty to obtain additional evidence, Plaintiff's claim is without merit. This is especially true where Plaintiff apparently knows exactly where the evidence can be found.

Even assuming the evidence in question was before the ALJ, the result would not likely have changed. Plaintiff contends that the missing evidence document impairments such as back pain, carpal tunnel pain, insomnia, hoarseness, allergy tests, osteoporosis, sciatica, spastic dysphoria, nervousness, insomnia, dry eyes, and chest and arm pain. If these impairments were "documented," there is no evidence in the record that they were either severe or imposed any limitations. Although Plaintiff contends that some of the records are missing, surely one would expect there to be notations of limitations elsewhere in the record if the impairments were as severe as Plaintiff alleged. The mere diagnosis of an impairment is not sufficient to sustain a finding of disability. *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

B.  <u>Non-Severe Impairments</u>

Next, Plaintiff contends that the ALJ erred in finding her impairments non-severe. She believes that her CTS, IBS, osteoporosis, back pain, diabetes symptoms and spastic disorder constitute a combination of impairments, that should be considered severe. In support of her

argument, Plaintiff sets forth the symptoms from her various impairments and lists the activities that she cannot perform. Almost all of her precluded activities involve functions that she feels she cannot do in her position as a teacher.

Plaintiff bears the burden of proving that she is disabled. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999); 20 C.F.R. § 404.1512. A person is disabled if his impairments are severe and meet the durational requirement of twelve months. 20 C.F.R. §§ 404.1505, 404,1520(a). A severe impairment is one that significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Examples of basic work activities include carrying out simple instructions, responding appropriately to usual work situations, dealing with changes in a routine work setting, and performing ordinary physical functions like walking and sitting. 20 C.F.R. § 404.1521(b).

An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at step II if the medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities). SSR 85-28. In determining whether an impairment or combination of impairments is "severe," an ALJ should carefully examine the medical findings that describe the impairments and make an "informed judgment" about the limitations and restrictions the impairment and related symptoms impose on the person's physical and mental ability to do basis work activities. SSR 96-3p.

Here, the ALJ concluded that the medical record did not demonstrate the existence of any severe medically determinable impairment, or combination of impairments, prior to her date last insured. AR 18. In making this determination, the ALJ reviewed the medical evidence for the relevant period- October 30, 1995, to December 31, 1999.

He reviewed the evidence of Plaintiff's IBS, including her experience with medications and diet changes, as well as the numerous negative tests performed. AR 18-19, 23-24. He concluded that her IBS was somewhat controlled and that her periods of acute discomfort were

not a marked impairment lasting for a continuous period of at least 12 continuous months, precluding all work activity. AR 23-24.

The ALJ reviewed the evidence of Plaintiff's back pain, and explained that although there was radiographic evidence of osteoporosis and osteopenia from 1196 and 1999, there was no evidence of arthritis or osteoarthritis until June 2001. Even so, there was no evidence of significant limitation of motion of the spine, and in fact, no treating practitioner reported any limited motion of her back, wrist or shoulder prior to December 31, 1999. AR 22. Similarly, there was no evidence that Plaintiff could not ambulate effectively and she reported in January 2003 that she was able to walk 3 or 4 days a week for about 30 minutes. AR 22.

As to Plaintiff's CTS, the ALJ noted that despite Plaintiff's allegations, she did not have any significant treatment for CTS since her 1993 carpal tunnel release. AR 22. Instead, Plaintiff received conservative treatment with splints, anti-inflammatory medications and Tylenol. There were no tests in the record to document CTS or nerve entrapment, and there was no evidence of muscle wasting in her upper extremities. AR 22-23.

In reviewing Plaintiff's diabetes, he explained that she was diagnosed in April 2000, after her date last insured. Although Plaintiff stated that she thought she was hypoglycemic in March 1997, there were no glucose tests in the record prior to her date last insured. The evidence also suggests that Plaintiff's diabetes was under satisfactory control with diet alone; she did not require treatment with medication or hospitalization. The evidence also failed to establish any end organ damage or other medical problems associated with diabetes. AR 23.

As to Plaintiff's allegation of spastic dysphonia, the ALJ correctly noted that there was no evidence in the record of treatment for such an ailment. AR 24.

The ALJ also reviewed the evidence, or lack thereof, relating to Plaintiff's myriad of other complaints- shoulder bursitis, wrist pain, swelling in her fingers and joints, stomach discomfort, angina, palpitations, heart murmur, shortness of breath, hay fever, post-nasal drip, stress incontinence, anxiousness and difficulty sleeping. AR 22-24. Despite Plaintiff's allegations, however, the ALJ correctly noted that the medical record did not include any doctor-imposed functional limitations and simply did not support a finding that any of these

impairments qualified as a severe impairment that lasted for a continuous 12-month period prior to her date last insured. AR 24.

In so finding, the ALJ correctly explained that pursuant to 96-4p, more than just symptoms are required for a finding of a severe impairment. Throughout the hearing and the review process, including her briefing before this Court, Plaintiff focuses almost entirely on the symptoms of her alleged impairments rather than any resulting limitations. As explained before, the mere diagnosis of an impairment is not sufficient to sustain a finding of disability. *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985). To the extent that she does explain how her impairments limited her ability to work, she confines her discussion to how her teaching position was affected. However, a showing of disability requires a showing that she could not perform basic work activities such as carrying out simple instructions, responding appropriately to usual work situations, or dealing with changes in a routine work setting. This analysis is not limited to tasks that Plaintiff could not perform in her prior employment. For example, the fact that Plaintiff could not lead her students in exercise and dance, read stories or sing to them does not mean that Plaintiff could not perform basic work activities. The Court recognizes that Plaintiff's prior teaching position may be the most familiar to her in terms of how her alleged impairments affected her abilities, but her inabilities as to one position does not equate to a finding of disability.

The ALJ found, and the Court agrees, that her impairments were not severe. There was no doubt substantial evidence to support the ALJ's conclusion.

C.  Plaintiff's Subjective Complaints

Finally, Plaintiff believes that the ALJ improperly evaluated her credibility.

The ALJ is required to make specific findings assessing the credibility of plaintiff's subjective complaints. *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991). In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988)). Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the

severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002). "The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Id.* (citing *Light v. Chater*,119 F.3d 789, 792 (9th Cir. 1997). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.*

In assessing Plaintiff's credibility, the ALJ began by explaining that the medical evidence did not support her assertion that her impairments prevented her from working from October 20, 1995, to December 31, 1999. AR 22. The ALJ then set forth a thorough review of her medical records and his explanation as to why the records did not support Plaintiff's allegations. AR 22-24. Although the ALJ cannot rely solely on the objective evidence in rejecting Plaintiff's complaints, it may be considered in conjunction without other factors. *Light v. Chater*, 119 F.3d 789, 792 (9th Cir. 1997).

Next, the ALJ explained that Plaintiff's daily activities suggested that she was not as disabled as she alleged. For example, she reported that she was able to drive, shop, care for her personal needs, prepare meals, wash her hair, make beds, do laundry, do light housekeeping, walk three to four times a week, and attend church. AR 24. Plaintiff's daily activities are a proper consideration in evaluating her subjective complaints and the ALJ reasonably concluded that her activities suggested that she was not as disabled as she alleged. *Thomas*, 278 F.3d at 958.

Finally, the ALJ cited specific factors from which he could infer that Plaintiff's complaints were not fully credible. Indeed, an ALJ may make inferences that flow logically from the evidence. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). For example, the ALJ explained that although Plaintiff reported that she wanted to return to work, she stopped working

by choice, without a doctor's excuse, and received a lump sum payment. From this, the ALJ suggested that Plaintiff "had a retired lifestyle, and may not have been motivated to seek work activity." He also notes that Plaintiff did not file a Workers' Compensation claim. AR 24. Plaintiff disagrees with ALJ's inferences, explaining that after she "gave up on being able to go back to work," she took money out of her retirement savings account, but did not receive a "lump sum pension settlement." She further contends that she did not file a Workers' Compensation claim because she was not injured on the job, and did not file an SSI claim at that time because she intended to go back to work. AR 24. Finally, she argues that she did not have a doctor's excuse to stop working because she was intending to return to work and therefore did not ask for one.

As one would expect, Plaintiff has her own explanation of the above events. The responsibility for resolving conflicts rests with the ALJ, however, and the Court must uphold the decision where the evidence is susceptible to more than one rational interpretation. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The factors cited by the ALJ were indeed open to interpretation, but the ALJ's inferences are logical and rational. Even assuming the ALJ improperly relied on any one factor relating to Plaintiff's work history, his credibility determination should be upheld. *Batson v. Barnhart*, 359 F.3D 1190, 1197 (9th Cir. 2004) (upholding ALJ's credibility determination even though one reason may have been in error).

"Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation ... and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision." *Fair,* 885 F.2d at 603. Plaintiff's claim is without merit and must be denied.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in

favor of Defendant Jo Anne B. Barnhart, Commissioner of Social Security and against Plaintiff Barbara G. Biggs.

    IT IS SO ORDERED.

    Dated:   **March 5, 2007**          /s/ **Dennis L. Beck**
3b142a                                                      UNITED STATES MAGISTRATE JUDGE